(No. 5210. July 27, 1929.)

ELMER RENSTROM and RACHEL RENSTROM,
Respondents, v. CITY OF NAMPA, Appellant.

[279 Pac. 614.]

Leon M. Fisk, for Appellant.

D. L. Rhodes, for Respondents.

T. BAILEY LEE, J.—This suit was brought by plaintiffs and respondents Renstrom against the City of Nampa for damages for injuries to plaintiff, Rachel Renstrom, alleged

to have been caused by her falling on an ice-coated street. After averring the defendant's corporate nature, plaintiffs plead in substance that the defendant had, about November 28, 1924, in freezing weather, caused one of its principal streets to be sprinkled or flushed, with the result that the water froze and remained frozen thereon, producing a heavy coating of ice and rendering a certain portion thereof slippery and unsafe; that about 8 o'clock on the evening of either the day of such sprinkling or flushing or the day after, in order to reach her parked car, she stepped from the sidewalk at a point where pedestrians usually crossed, and had the right to cross, and by reason of the icy condition of the street slipped and fell, sustaining certain itemized, serious and permanent injuries, to her damage in the sum of $10,282.50. Defendant demurred generally and on the special ground that "paragraph four of said amended complaint does not state any facts to show negligence on the part of this defendant; wherein either by acts of commission or omission defendant violated any duty owing from it to the plaintiffs, or performed or did any act it did not have a legal right to do or that was not necessary and essential in carrying out its governmental functions, or that said acts constituted a nuisance to these plaintiffs or to the traveling public, or that defendant had any knowledge of said dangerous condition or failed to correct the same; and further that the allegation of a smooth and slippery condition does not aver actionable negligence on behalf of this defendant, without further allegations of some defective condition in said street for which defendant should be held liable."

Which demurrer having been overruled, the defendant answered, admitting the sprinkling and flushing complained of, denied all liability, denied that it knew or had opportunity to know that the water would freeze, and declared that the said operation was a governmental duty imposed upon it by law. A verdict was had in plaintiff's favor for $3,282.50. Judgment ensued, defendant appealed.

First is the contention that defendant's demurrer should have been sustained. Conceding that a municipality

is not liable in damages for injuries resulting from the discharge of purely governmental duties, there is a vast difference between such injuries and those resulting from the municipality's failure to remove a continuing and menacing condition brought about by the negligent performance of such duties. The rule of immunity has the distinct limitation that no nuisance shall be created. (43 C. J. 972, par. 1750, note 17.) And, while an icy street may or may not be a nuisance, the same principle applies when defects or dangerous conditions exist therein. Directly authoritative is the text of the volume just cited, at p. 972, par. 1479, note 13:

" . . . . if, after the governmental service ends a ministerial duty begins, to prevent a dangerous condition, having its *inception* in the discharge of the governmental function, the municipality will be liable for negligence in the performance of such ministerial duty." (Italics ours.)

The care of streets and sidewalks is a ministerial duty in Idaho. (*Strickfaden v. Green Creek Highway Dist.*, 42 Ida. 738, 49 A. L. R. 1057, 248 Pac. 456.) A masterly discussion of this principle is found in *Savannah v. Jones*, 149 Ga. 139, 99 S. E. 294, where the court said:

"If the city caused the situation of peril, even in the discharge of a governmental function, and left the sidewalk in a dangerous condition, and the plaintiff put himself in a position of danger, it is a question for the jury, etc. . . . . . If the rule were otherwise than above stated, the governmental duty might be begun, but never ended; and, regardless of negligence relative to the ministerial duty in keeping the streets free from obstruction, the person injured would be remediless."

The court has just stated the rule as follows:

"The question of liability of the municipality, as between the latter and the public, depends upon whether *at the time of the injury* the municipality is engaged in a governmental or ministerial duty. If it is engaged, *at the time of the injury,* in a governmental function, the municipality is not

liable in damages caused by the negligence of the persons employed thereby.'' (Italics ours.)

 The demurrer was properly overruled. Defendant charges that the denial of its motion for nonsuit was error, insisting that there was no evidence of negligence or that defendant in flushing the street was not doing anything it did not have a legal right to do at the time it did it. In view of the record, it will hardly be contended that the City of Nampa was engaged in such governmental duty at 8 o'clock at night, long after the flushing had been concluded; and it is indisputable that the condition that induced plaintiff's injuries was the ice formed, consequent to defendant's ill-timed flushing. Defendant's employee, Schindell, testified that he had flushed the particular spot where the injury occurred at 11:30 A. M.; that at that time he noticed that the place was frosted and the water freezing on the sidewalk, and for that reason he had turned off the power. He further stated that ''it started to freeze'' about the middle of the afternoon. The city, therefore, had knowledge of the dangerous condition, but took no steps to remedy it. It must be remembered that this condition was not brought about by the operations of nature, but by the deliberate act of the city in the presence of weather conditions obvious at the time. When nature acts, the city is taxed with only ordinary care. What shall be said of the case where the city brings about and permits a continuation of the arisen danger?

The court committed no error in denying the motion. Nor was there any error in refusing to instruct on defendant's mistaken theory of the case. A careful examination of the leading cases cited by appellant shows that they not only fail to support its theory, but fall within the rule so ably discussed in *Savannah v. Jones, supra.* In all of these the injury occurred while the city was engaged in the performance of some governmental duty. In *Kippes v. City of Louisville,* 140 Ky. 423, 131 S. W. 184, 30 L. R. A., N. S., 1161, a hose burst while flushing the street, drenching plaintiff, and causing her a severe cold. In *Connely v. City of*

*Nashville,* 100 Tenn. 262, 146 S. W. 565, a street sprinkler collided with and overturned plaintiff's buggy. In *Scales v. City of Winston-Salem,* 189 N. C. 469, 127 S. E. 543, the defendant's employee sought to recover for injuries received while operating a public incinerator. In *Snider v. High Point,* 168 N. C. 608, 85 S. E. 15, a child's clothes caught fire while playing about a burning, official city dump which at the time was being fed intermittently by the city garbage carrier. These cases are typical: no one of them holding that a municipality is immune from liability for injuries due to dangerous conditions having their inception in the discharge of governmental functions.

The authorities are at one on the proposition that a city is held to a stricter degree of care in respect to sidewalks than ordinary streets. Plaintiff stepped from the sidewalk to the crossing and there encountered her mishap. Such a crossing was in effect nothing but a continuation of the sidewalk and equally as important to pedestrians.

Appellant contends that it was not liable for merely slippery streets. That may be true, where nature is the imminent and unavoidable cause, coupled with other circumstances. But when a city brings about a menace, and knowingly lets it continue for an unreasonable time, it is as liable for injuries suffered therefrom as is an individual.

Judgment affirmed. Costs to respondent.

Givens, Wm. E. Lee and Varian, JJ., concur.

Budge, C. J., did not take part.