**219 P.2d 651**

**HOOTON et al. v. CITY OF BURLEY.**

No. 7553.

Supreme Court of Idaho.

May 23, 1950.

As Corrected on Denial of Rehearing
June 23, 1950.

O. R. Baum, Pocatello, S. T. Lowe and Norman Nielson, Burley, for appellant.

B. W. Davis and L. F. Racine, Jr., Pocatello, for respondents.

KEETON, Justice.

Rex Bates Hooton, 34 years of age, husband of Velma S. Hooton, and father of Allan S. Hooton, and other minors above mentioned, was electrocuted by coming in contact with an electric transmission line on December 14, 1947. His widow and minor children prosecute this action for damages claiming that the death of the husband and father was caused by the negligence of the defendant (appellant).

Appellant will be referred to as defendant and respondents will be referred to as plaintiffs.

The cause was tried before a jury and it returned a verdict in favor of the plaintiffs for the sum of $40,000. The defendant moved for judgment notwithstanding the verdict and for a new trial, both of which motions were by the court overruled and judgment entered on the verdict. The defendant has appealed from the judgment and from the order overruling the motion for a new trial.

The pertinent facts are: Defendant is a municipal corporation and in its capacity as such is engaged in the transmission and furnishing of electrical energy for commercial purposes. Within its corporate limits owned and operated by the city is a street lighting system which carries 2300 volts of electricity. This street lighting system is separate and distinct from the one furnishing electrical energy to residences and business houses. The poles and wires carrying the electric energy are placed along the alleys.

Deceased and a Mr. Aldrich were employed to remove some trees from the premises of a man named Carson, and it became necessary that the feeder wires to a street light be removed to prevent the trees from falling across them.

At the request of Carson, the city employees disconnected two lead wires from the pole on the west side of Normal Avenue, and coiled them up and hung the same in a small tree near the boundary line of an alley. The bottom of the wire coils was about two feet from the ground. At the time the wires were thus disconnected from the street lighting system, they were not energized.

At about 5:15 p. m. the automatic time clock turned the current into the street lighting system and energized the electric wires, and the wires that were coiled and hung near the alley began to flash and sparkle. At this time the employer Carson and the deceased and his partner Aldrich were approximately 125 to 150 feet from the energized wires. Noticing that the wires were flashing and emitting sparks, and making a crackling noise, and appeared to be on fire, deceased walked down the alley toward the wires, and after he had gone about 25 feet Aldrich called to him to leave the wires alone, that it was the city's duty to take care of them. The attention of Aldrich and Carson was then directed toward the arrival of an automobile and when they next looked, the deceased Hooton was near one of the coils of wire with his left hand raised or extended. No one saw the deceased touch the wires. Deceased fell back to the ground with one of the coils of wire across his body. This coil of wire was removed and an attempt to resuscitate him failed. The electric current in the street lighting system was then turned off. Thereafter, this suit was brought and damages awarded as above stated.

Negligence of the city was sufficiently proved and also admitted by the defendant and will not be discussed.

The defendant contends that the deceased was guilty of contributory negligence as a matter of law and such contributory negligence was the proximate cause of his death, for which reason judgment notwithstanding the verdict should have been entered. Defendant asserts that the deceased was present and saw the wires were energized at a time immediately preceding his coming in contact with them; that he saw and was told that the wires were on fire and that the city should be notified; at that time deceased was approximately 125 feet away from the energized wires; that notwithstanding these facts, he deliberately, knowingly and intentionally and not accidentally walked to and came in contact with the live wires; and if he had exercised reasonable care, he could have discovered the danger and avoided it; that even though it were proved and admitted that the city was negligent, nevertheless the plaintiff could not recover.

Defendant further contends that there is only one conclusion to be drawn from the evidence which establishes contributory negligence as a matter of law; that the deceased voluntarily placed himself in a position of peril, which he must have appreciated and comprehended; and that the evidence is such that reasonable minds could not differ as to the conclusion to be drawn therefrom.

■ It is a general rule of law that when one knows of a danger brought about by the negligence of another, and understands and appreciates the risk therefrom and voluntarily exposes himself to such danger, he is precluded from recovering for resulting injuries.

■ Further, where one claiming damages for personal injuries contributes to the injury by want of ordinary care by placing himself in a dangerous position where he might be injured, and does not exercise ordinary care in preventing injury to himself after being placed in such position, then the mere fact that another was negligent would not relieve the one injured from the effects of his contributory negligence; and if the person injured could have avoided such consequences by the exercise of reasonable care and prudence, then no recovery can be had. Rippetoe v. Freely, 20 Idaho 619, 119 P. 465; Bryant v. Hill, 45 Idaho 662, 264 P. 869; Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155, 29 N.E. 464, 31 Am.St.Rep. 537.

■ The plaintiffs in this case may recover for decedent's death only if he, if living, could have recovered for his injuries.

■ However, an injured person's knowledge of the physical characteristics of the offending instrumentality or condition does not of itself constitute contributory negligence. It is the appreciation of, or the opportunity to appreciate the peril in an instrumentality or condition, rather than the knowledge of the physical characteristics that bars a plaintiff from recovery for neg-

ligence. 38 Am.Jur. 864, Sec. 188; Splinter v. City of Nampa, 70 Idaho 287, 215 P. 2d 999, at page 1004.

The wires had been disconnected from one street light (voltage of which is not by the transcript shown) and there is nothing in the record to show that deceased knew that this street light was on a circuit that carried a current of 2300 volts.

The tree, or bush, to which the disconnected wires were attached, was itself a conductor of electricity; the ground was damp; the decedent's head and other parts of his body, as well as his hand, were burned by the electric current. Through exact medium the electric current first entered his body is impossible to say. The wires carrying the current were insulated. The deceased at the time of the injury wore a pair of canvas gloves. It was for the jury to consider and determine under all the facts whether a reasonably prudent person might justifiably believe that a properly insulated electric wire should not, or would not, jump the insulation and do damage to a person coming in contact with it.

Also, damp ground, or water, may, under some conditions, be a conductor of electricity. The short circuit in the case at bar may have entered the ground or contacted with one of the bushes, or the tree, and without any contact with the wire itself may have first electrically shocked the decedent.

Under these circumstances, would the decedent have reason to know or believe, or would a reasonably prudent person know or believe that contact with the insulated wire or other electrical conductor would cause sufficient current to enter his body to injure or kill him, and did he at the time of the injury act in a reasonably prudent manner?

It is unreasonable to suppose that a person would deliberately place himself in a position of danger if such danger were known or should have been known, and the generally accepted theory that one's natural instinct is to preserve and protect himself from injury whenever possible would preclude the idea that the defendant either knew, or should have known, or appreciated the danger to which he was exposed.

In an action for damages for a wrongful death, the presumption which arises in favor of the instincts of self-preservation and the known disposition of men to avoid injury or personal harm to themselves constitutes a prima facie inference that the person killed was at the time in the exercise of ordinary care and was himself free from contributory negligence, and the law presumes unless the contrary is shown, that such deceased person exercised the measure of care which it was his duty to exercise. Adams v. Bunker Hill & Sullivan Mining Co., 12 Idaho 637, 89 P. 624, 11 L.R.A.,N.S., 844; Geist v. Moore, 58 Idaho 149, 70 P.2d 403.

This presumption which arises in favor of self-preservation and the known

disposition of men to avoid injury is rebuttable. Geist v. Moore, 58 Idaho 159, 70 P.2d 403.

Contributory negligence is a matter of defense, and the burden of proving such is on the party pleading such defense. Sec. 5-816, I.C.; Knauf v. Dover Lbr. Co. 20 Idaho 773, 120 P. 157; Burns v. Getty, 53 Idaho 347, 24 P.2d 31; Madron v. McCoy, 63 Idaho 703, 126 P.2d 566.

Negligence, or contributory negligence, and the proximate cause of the death or injury, are questions of fact and unless the proof is such that reasonable minds could not differ, the question of negligence or contributory negligence is one for the jury. Eaton v. City of Weiser, 12 Idaho 544, 86 P. 541, 118 Am.St.Rep. 225; Staab v. Rocky M. B. Tel. Co., 23 Idaho 314, 129 P. 1078; Dept. of Finance of State of Idaho v. U. P. R. Co., 61 Idaho 484, 104 P.2d 1110; Stearns v. Graves, 62 Idaho 312, 111 P.2d 882; O'Connor v. Meyer, 66 Idaho 15, 154 P.2d 174; Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430.

We therefore conclude that the question of contributory negligence, the burden of proof being on the defendant to establish, and the proximate cause of the damage and injury complained of, were questions of fact to be determined by the jury, and that the proof in this case is such that reasonable minds might differ on the conclusions to be drawn and it is not the province of this court to interfere with the findings of the jury on controversial issues where there is substantial evidence to sustain such findings.

Appellant further contends that the lighting of the streets of Burley was a governmental function. This contention was adversely decided by this court in the case of Eaton v. City of Weiser, 12 Idaho 544, 86 P. 541, 118 Am.St.Rep. 225.

The operation of an electric lighting system by a municipal corporation and the sale of electric energy to private concerns, or lighting of streets by a system owned and controlled by such municipal corporation, is not a governmental function and a city is liable for the careless and negligent exercise of such undertaking, the same as an individual or private corporation exercising a similar right.

When a city is engaged in private industry, it must of necessity assume the same duties, responsibilities and liabilities on account of negligence as are imposed on and attach to private owners of similar enterprises. For the benefits which attach to such undertaking, it must of necessity assume the burdens incidental thereto. Eaton v. City of Weiser, supra; Henderson v. Twin Falls County, 56 Idaho 124, 50 P.2d 597, 101 A.L.R. 1151; Renstrom v. City of Nampa, 48 Idaho 130, 279 P. 614.

The city had no governmental, mandatory duty to operate an electric lighting system.

378

Defendant complains of admission in evidence of plaintiff's exhibits "A" and "B"; "A" being a photograph of the deceased dressed in an army uniform taken some four years prior to his death; "B" being a certified copy of his honorable discharge from the United States Army. While the photograph may have been remote in point of time and the discharge incompetent and immaterial, we conclude that the admission of such exhibits was harmless error. Sec. 5-907, I.C. provides: "The court must, in every stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties and no judgment shall be reversed or affected by reason of such error or defect."

An error in proceedings which does not affect substantial rights of the parties cannot be made the basis of reversal of a decree or a judgment. Boise Street Car Co. v. Van Avery, 61 Idaho 502, 102 P.2d 1107.

Where there is substantial evidence to support the verdict of the jury, the judgment will not be reversed upon appeal by reason of errors or defects in the proceedings which do not affect the substantial rights of the parties. Richardson v. Bohney, 26 Idaho 35, 140 P. 1106.

We do not see where the admission resulted in any prejudice to the defendant or its substantial rights adversely affected.

Defendant complains of the giving of instructions 5, 12, 16 and 22.

Instruction No. 5, advises the jury of the degree of care required of persons engaged in the generation and distribution of electrical energy and the duty of those so engaged to exercise care to avoid injury to persons who might lawfully, but accidentally or otherwise, come in contact with the energized wires.

Instruction No. 12 covers the burden of proof of one relying on contributory negligence as a defense.

Instruction No. 16 covers the presumption arising from instincts of self-preservation and the natural disposition of all persons to avoid personal harm.

Instruction No. 22 covers the measure of damages.

The deceased's widow had testified that the funeral bill and other expenses connected with the deceased's death were between $700 and $1000, and in the latter instruction the court instructed the jury that an award could be made for this item not exceeding $1000.

While the proof on the amount of pecuniary loss due to funeral and other expenses connected with the deceased's death was not established in as definite terms as it could have been, the limiting of recovery to the testimony given was not error.

Instruction No. 22 allowed the jury, in determining the amount of recovery, to consider "the age of the deceased and of each plaintiff; the state of health and the

physical condition of the deceased and of each plaintiff as it existed at the time of the death and immediately prior thereto; their respective expectancies of life as shown by the evidence; the disposition of the deceased, whether it was kindly, affectionate or otherwise; " and the "inclination to contribute to the support of the plaintiffs or any of them; the earning capacity of the deceased and of each plaintiff, as disclosed by the evidence;" and "such other facts, shown by the evidence, as throw light on the value of the love, comfort, companionship and the support which the plaintiffs reasonably might have expected to receive from the deceased had he lived". Further, that no recovery could be had by the plaintiffs for "mental suffering or mental grief of the plaintiffs or any of them, which resulted from the death of the husband and father".

These elements of damage were in substance approved by this Court in the case of Hepp v. Ader, 64 Idaho 240, 130 P.2d 859 and Wyland v. Twin Falls Canal Co., 48 Idaho 789, 285 P. 676.

The objection to the instruction that there was no evidence as to the expectancies of life or the earning capacities of the plaintiffs is inconsequential for the reason that if the record contained no such evidence, it would in the first instance, be presumed, unless the contrary appeared, that the jury based its verdict on evidence properly introduced. The court in Instruction No. 25, told the jury that its verdict should be based upon evidence admitted upon the trial and the instructions of the court applicable thereto, and nothing else. We do not see how the instruction complained of could have misled the jury in any way.

The death statute, Sec. 5-311, I.C. provides among other things "such damages may be given as under all the circumstances of the case may be just." The giving of the instruction especially when considered with others given is not error.

In the court's instructions to the jury, he outlined the issues. By instructions 7, 8, 10, 11, 13, 14 and 18, the court covered contributory negligence and the duty of the deceased to exercise ordinary care for his own protection, and instruction No. 14 told the jury: "Contributory negligence, if proved, is a complete defense to this action. It is the law of this state that if the party injured was guilty of the slightest amount of negligence which proximately contributed to the injury, no recovery can be had regardless of the degree of negligence of the other party."

This instruction was as favorable, if not more favorable, than the defendant was entitled to.

Instruction No. 7 told the jury that the law imposed the obligation to use ordinary care for one's own protection, the degree of which is commensurate with the known danger to be avoided.

Instruction No. 8 further instructed the jury that a failure on the part of Hooton to exercise that degree of care which a reasonably prudent person of similar age, experience and intelligence would have exercised under like or similar circumstances, would be contributory negligence.

Instruction No. 10 told the jury that a mere surmise that there may have been negligence on the part of the defendant or the mere fact that the deceased came in contact with wires of the city carrying electric current would not entitle the plaintiffs to a verdict.

Instruction No. 18 told the jury that if Rex Hooton knew or had grounds to believe that the wires that killed him were charged with a dangerous current of electricity and he failed to exercise ordinary care, the verdict must be for the defendant.

Taking the instructions as a whole, they are as favorable to the defendant as could be required. The law covering contributory negligence as a defense was fully covered by the instructions given.

Appellant contends that the court erred in refusing to give certain instructions to the jury. We have examined the same and find that such requested instructions were either fully covered by other instructions given, or were not applicable to the case, and that the instructions given, as a whole, fully covered the issues and law applicable thereto.

Appellant further contends that the verdict is excessive and must have been rendered under passion and prejudice.

It must be borne in mind that the deceased had an earning capacity of approximately $300 a month, had an expectancy of life of over 30 years, he left a widow and three small children, Allan, aged seven, Daniel, aged three, and Richard, aged two, dependent on him for support.

Judicial notice may be taken that the purchasing power of the dollar has decreased to approximately one-half of what it was prior to the present inflationary spiral. This factor should be taken into consideration in determining the amount of damages necessary to compensate an injured person, or persons, for losses sustained as a result of injuries suffered.

The value of money lies not in what it is, but what it will buy. The increased cost of living and diminished purchasing power of money should be recognized as a proper matter for consideration in passing upon a verdict when attacked as excessive or inadequate.

The amount of the verdict in this case is reasonably within the proof offered and is not so large as to indicate that the jury followed a wrong measure of damages or was influenced by passion, prejudice or other improper motive.

In examining the record as a whole, we find no reversible error. Judgment is affirmed. Costs to respondents.

HOLDEN, C. J., and GIVENS and PORTER, JJ., concur.

TAYLOR, Justice.

I concur in the conclusion reached. However, I dissent from that portion of the opinion to the effect that the operating of a street lighting system by a municipality is not a governmental function and that it was so held in Eaton v. City of Weiser, 12 Idaho 544, 86 P. 541, 542, 118 Am.St. Rep. 225. The Weiser case holds that, "The city was engaged in a private enterprise, namely, that of manufacturing and selling electric light to its inhabitants. Such an engagement or enterprise is not one of the public governmental duties of municipalities." Nothing is said in that case about a municipal street lighting system owned and operated by the city. And it cannot be determined from the opinion whether the sagging wire which caused the damage was used for street lighting or for the sale of electric energy to the consumers. Hence, that case is authority for the proposition only that the manufacture and sale of electric energy to private consumers by a city is a proprietary function. In this case

the record shows that the street lighting system of the defendant was operated by it entirely separate and apart from its business of generating and supplying electricity to consumers. The lighting of the streets is a part of the governmental duty, imposed by statute upon the city, of keeping its streets and alleys in a reasonably safe condition for use by the public in the usual and customary manner. Section 50-1141, I.C.; Carson v. Genesee, 9 Idaho 244, 74 P. 862, 108 Am.St.Rep. 127; Moreton v. St. Anthony, 9 Idaho 532, 75 P. 262; Powers v. Boise, 22 Idaho 286, 125 P. 194; Baillie v. Wallace, 24 Idaho 706, 135 P. 850; Strickfaden v. Greencreek Highway District, 42 Idaho 738, 248 P. 456, 49 A.L.R. 1057.

Obviously, where a street light is necessary to make a street reasonably safe for use at hours when streets are ordinarily used after dark, it would be the duty of the city to provide the light. In doing so, it would be discharging a governmental function. Trueman v. St. Maries, 21 Idaho 632, 123 P. 508. In this case, the result is the same whether it be regarded as a governmental or proprietary function. The rule has long been established that the city's duties with respect to its streets must be discharged by the city at its peril, and that it is liable for damage caused by its neglect of that duty. Authorities above.